UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TAMMI FUQUA,

         Plaintiff,

   v.

UNITED PARCEL SERVICE, INC.,

        Defendant.

Case No. 16-cv-01193-JSC   (JCS)

**FINAL JURY INSTRUCTIONS**

**IT IS SO ORDERED.**

Dated: September 24, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

**JURY INSTRUCTION NO. 1**

**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**JURY INSTRUCTION NO. 2**

**CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff Tammi Fuqua asserts that UPS failed to reasonably accommodate her disability; that UPS failed to engage in the interactive process in good faith; that UPS terminated Ms. Fuqua because of her disability; that Ms. Fuqua was harassed based on her disability and that UPS failed to prevent discrimination and harassment. Ms. Fuqua has the burden of proving these claims.

UPS denies Ms. Fuqua's claims.

**JURY INSTRUCTION NO. 3**

**BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**JURY INSTRUCTION NO. 4**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness; and

2.  the exhibits that are admitted into evidence.

# JURY INSTRUCTION NO. 5

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

United States District Court
Northern District of California

## JURY INSTRUCTION NO. 6

### DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

**JURY INSTRUCTION NO. 7**

**RULING ON OBJECTIONS**

As I instructed you at the outset of the case, there are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overruled the objection, the question could be answered or the exhibit received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Similarly, if I ordered that evidence be stricken from the record and that you disregard or ignore that evidence, you must not consider the stricken evidence for any purpose.

# JURY INSTRUCTION NO. 8

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**JURY INSTRUCTION NO. 9**

**IMPEACHMENT EVIDENCE—WITNESS**

Evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 10**

**DEPOSITIONS IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The depositions of several witnesses taken before trial were read to you during the parties' presentation of evidence. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person who read the questions and answers.

**JURY INSTRUCTION NO. 11**

**USE OF REQUESTS FOR ADMISSION**

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**JURY INSTRUCTION NO. 12**

**FIRST CLAIM: FAILURE TO PROVIDE REASONABLE ACCOMMODATION**

Tammi Fuqua claims that UPS failed to reasonably accommodate her disability. To establish this claim, Ms. Fuqua must prove all of the following:

1.      That UPS was an employer;

2.      That Ms. Fuqua was an employee of UPS;

3.      That Ms. Fuqua had a disability that limited a major life activity;

4.      That UPS knew of Ms. Fuqua's disability that limited a major life activity;

5.      That Ms. Fuqua was able to perform the essential functions of the job she had, or a UPS job she desired, with reasonable accommodation for her disability;

6.      That UPS failed to provide reasonable accommodation for Ms. Fuqua's disability;

7.      That Ms. Fuqua was harmed; and

8.      That UPS's failure to provide reasonable accommodation was a substantial factor in causing Ms. Fuqua's harm.

**JURY INSTRUCTION NO. 13**

**"MAJOR LIFE ACTIVITIES" EXPLAINED**

"Major life activities" shall be construed broadly and include physical, mental, and social activities, especially those life activities that affect employability or otherwise present a barrier to employment or advancement.

Major life activities include, but are not limited to, caring for oneself, performing manual tasks, sleeping, walking, standing, sitting, reaching, lifting, bending, learning, reading, concentrating, thinking, communicating, interacting with others, and working.

An impairment "limits" a major life activity if it makes the achievement of the major life activity difficult.

# JURY INSTRUCTION NO. 14

## "ESSENTIAL JOB DUTIES" EXPLAINED

In deciding whether a job duty is essential, you may consider, among other factors, the following:

(a) Whether the reason the job exists is to perform that duty;

(b) Whether there is a limited number of employees available who can perform that duty; and

(c) Whether the job duty is highly specialized so that the person currently holding the position was hired for his or her expertise or ability to perform the particular duty.

Evidence of whether a particular duty is essential includes, but is not limited to, the following:

a. UPS's judgment as to which functions are essential;

b. Written job descriptions prepared before advertising or interviewing applicants for the job;

c. The amount of time spent on the job performing the duty;

d. The consequences of not requiring the person currently holding the position to perform the duty;

e. The terms of a collective bargaining agreement;

f. The work experiences of past persons holding the job;

g. The current work experience of persons holding similar jobs; and

h. Reference to the importance of the job in prior performance reviews.

"Essential job duties" do not include the marginal duties of the position. "Marginal duties" are those that, if not performed would not eliminate the need for the job, or those that could be readily performed by another employee, or those that could be performed in another way.

**JURY INSTRUCTION NO. 15**

**"REASONABLE ACCOMMODATION" EXPLAINED**

A reasonable accommodation is a reasonable change to the workplace that allows an employee with a disability to perform the essential duties of the job.

Reasonable accommodations may include the following:

(a)   Making the workplace readily accessible to and usable by employees with disabilities;

(b)   Changing job responsibilities or work schedules;

(c)   Reassigning the employee to a vacant position;

(d)   Modifying or providing equipment or devices;

(e)   Modifying tests or training materials;

(f)   Providing qualified interpreters or readers; or

(g)   Providing other similar accommodations for an individual with a disability.


If more than one accommodation is reasonable, an employer makes a reasonable accommodation if it selects one of those accommodations in good faith.

# JURY INSTRUCTION NO. 16

## LEAVES OF ABSENCE AS REASONABLE ACCOMMODATIONS

When the employee cannot presently perform the essential functions of the job, or otherwise needs time away from the job for treatment and recovery, a leave of absence may be a reasonable accommodation provided that the leave is likely to be effective in allowing the employee to return to work at the end of the leave, with or without further reasonable accommodation, and does not create an undue hardship for the employer. An employer, however, is not required to provide an indefinite leave of absence as a reasonable accommodation.

When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence.

**JURY INSTRUCTION NO. 17**

**ESSENTIAL JOB FUNCTIONS AND REASONABLE ACCOMMODATIONS**

An employer is not required to eliminate essential functions of a job to accommodate a disabled employee.

**JURY INSTRUCTION NO. 18**

**SECOND CLAIM: FAILURE TO ENGAGE IN INTERACTIVE PROCESS**

Tammi Fuqua contends that UPS failed to engage in a good-faith, interactive process with her to determine whether it would be possible to implement effective reasonable accommodations so that Ms. Fuqua could perform the essential job duties with reasonable accommodation.   In order to establish this claim, Ms. Fuqua must prove the following:

1.    That UPS was an employer;

2.    That Ms. Fuqua was an employee of UPS;

3.    That Ms. Fuqua had a disability that was known to UPS;

4.    That Ms. Fuqua requested that UPS make reasonable accommodation for her disability so she would be able to perform the essential job requirements, or UPS was otherwise aware of her need for accommodation;

5.    That Ms. Fuqua was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements;

6.    That UPS failed to participate in a timely good-faith interactive process with Ms. Fuqua to determine whether reasonable accommodation could be made;

7.    That Ms. Fuqua was harmed; and

8.    That UPS's failure to engage in a good-faith interactive process was a substantial factor in causing Ms. Fuqua's harm.

**JURY INSTRUCTION NO. 19**

**THIRD CLAIM: HARASSMENT—ESSENTIAL FACTUAL ELEMENTS**

Tammi Fuqua claims that she was subjected to harassment based on her disability at UPS, causing a hostile or abusive work environment. To establish this claim, Ms. Fuqua must prove all of the following:

1. That Ms. Fuqua was an employee of UPS;

2. That Ms. Fuqua was subjected to unwanted harassing conduct because she was disabled;

3. That the harassing conduct was severe or pervasive;

4. That a reasonable person in Ms. Fuqua's circumstances would have considered the work environment to be hostile or abusive;

5. That Ms. Fuqua considered the work environment to be hostile or abusive;

6. That a supervisor engaged in the conduct;

7. That Ms. Fuqua was harmed; and

8. That the conduct was a substantial factor in causing Ms. Fuqua's harm.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 20**

**"HARASSING CONDUCT" EXPLAINED**

Harassing conduct may include, but is not limited to, verbal harassment, such as obscene language, demeaning comments, slurs, or threats.

**JURY INSTRUCTION NO. 21**

**HARASSMENT—"SEVERE OR PERVASIVE" EXPLAINED**

"Severe or pervasive" means conduct that alters the conditions of employment and creates a hostile or abusive work environment.

In determining whether the conduct was severe or pervasive, you should consider all the circumstances. You may consider any or all of the following:

(a)     The nature of the conduct;

(b)     How often, and over what period of time, the conduct occurred;

(c)     The circumstances under which the conduct occurred;

(d)     Whether the conduct was physically threatening or humiliating;

(e)     The extent to which the conduct unreasonably interfered with an employee's work performance.

## JURY INSTRUCTION NO. 22

## HARASSMENT—"SUPERVISOR" DEFINED

David Comer, Mario Lee, and/or Grace Mangaoang were supervisors of Tammi Fuqua if they had any of the following:

1. The authority to hire, transfer, promote, assign, reward, discipline, discharge, or suspend Ms. Fuqua, or effectively to recommend any of these actions;

2. The responsibility to act on Ms. Fuqua's grievances, or effectively to recommend action on grievances; or

3. The responsibility to direct Ms. Fuqua's daily work activities.

To be considered a supervisor, David Comer's, Mario Lee's, and/or Grace Mangaoang's use of this authority or responsibility must not be merely routine or clerical, but must require the use of independent judgment.

**JURY INSTRUCTION NO. 23**

**FOURTH CLAIM: FAILURE TO PREVENT HARASSMENT—ESSENTIAL FACTUAL ELEMENTS**

Tammi Fuqua claims that UPS failed to take all reasonable steps to prevent harassment based on her disability.  To establish this claim, Ms. Fuqua must prove all of the following:

1.    That Ms. Fuqua was an employee of UPS;

2.    That Ms. Fuqua was subjected to harassment in the course of employment;

3.    That UPS failed to take all reasonable steps to prevent the harassment;

4.    That Ms. Fuqua was harmed; and

5.    That UPS's failure to take all reasonable steps to prevent harassment was a substantial factor in causing Ms. Fuqua's harm.

**JURY INSTRUCTION NO. 24**

**FIFTH CLAIM: DISABILITY DISCRIMINATION—WRONGFUL TERMINATION**

Tammi Fuqua claims that UPS wrongfully discriminated against her based on her disability.  To establish this claim, Ms. Fuqua must prove all of the following:

1.       That UPS was an employer;

2.       That Ms. Fuqua was an employee of UPS;

3.       That UPS knew that Ms. Fuqua had a disability that limited a major life activity;

4.       That Ms. Fuqua was able to perform the essential job duties with reasonable accommodation for her disability;

5.       That UPS discharged Ms. Fuqua;

6.       That Ms. Fuqua's disability was a substantial motivating reason for UPS's decision to discharge her;

7.       That Ms. Fuqua was harmed; and

8.       That UPS's conduct was a substantial factor in causing Ms. Fuqua's harm.


Ms. Fuqua does not need to prove that UPS held any ill will or animosity toward her personally because she was disabled.  On the other hand, if you find that UPS did hold ill will or animosity toward Ms. Fuqua because she was disabled, you may consider this fact, along with all the other evidence, in determining whether Ms. Fuqua's disability was a substantial motivating reason for UPS's decision to discharge her.

**JURY INSTRUCTION NO. 25**

**DAMAGES—PROOF**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff, Tammi Fuqua, you must determine Ms. Fuqua's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

1.  The emotional pain and suffering experienced and that with reasonable probability will be experienced in the future;

2.  The reasonable value of wages lost up to the present time;

3.  The reasonable value of wages that with reasonable probability will be lost in the future.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 26**

**ECONOMIC AND NONECONOMIC DAMAGES**

The damages claimed by Ms. Fuqua for the harm caused by UPS fall into two categories called economic damages and noneconomic damages. You will be asked on the verdict form to state the two categories of damages separately.

**JURY INSTRUCTION NO. 27**

**ITEMS OF ECONOMIC DAMAGES**

The following are the specific items of economic damages claimed by Tammi Fuqua:

1.   Past lost earnings; and

2.   Future lost earnings.

**JURY INSTRUCTION NO. 28**

**ECONOMIC DAMAGES—PAST AND FUTURE LOST EARNINGS**

1.  Past Lost Earnings:  To recover damages for past lost earnings, Ms. Fuqua must prove the amount of income, earnings, salary, wages, and/or benefits that she has lost to date.

2.  Future Lost Earnings:  To recover damages for future lost earnings, Ms. Fuqua must prove the amount of income, earnings, salary, wages, and/or benefits she will be reasonably certain to lose in the future as a result of the injury.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 29**

**ITEMS OF NONECONOMIC DAMAGES**

The following are the specific items of noneconomic damages claimed by Ms. Fuqua:

1.   Past and future mental suffering and emotional distress.

**JURY INSTRUCTION NO. 30**

**NONECONOMIC DAMAGES—MENTAL SUFFERING AND EMOTIONAL DISTRESS**

Tammi Fuqua seeks an amount for non-economic damages for mental suffering. No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

To recover for future mental suffering, inconvenience, anxiety, humiliation or emotional distress, Ms. Fuqua must prove that she is reasonably certain to suffer that harm.

For future mental suffering, inconvenience, anxiety, humiliation and emotional distress, determine the amount in current dollars paid at the time of judgment that will compensate Ms. Fuqua for future mental suffering, inconvenience, anxiety, humiliation and emotional distress. This amount of non-economic damages should not be further reduced to present cash value because that reduction should only be performed with respect to economic damages.

# JURY INSTRUCTON NO. 31

## JURORS NOT TO CONSIDER ATTORNEY FEES AND COURT COSTS

You must not consider, or include as part of any award, attorney fees or expenses that the parties incurred in bringing or defending this lawsuit.

**JURY INSTRUCTION NO. 32**

**DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

# JURY INSTRUCTION NO. 33

## CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved— including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## JURY INSTRUCTION NO. 34

### COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, Ms. Karen Hom, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**JURY INSTRUCTION NO. 35**

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the courtroom deputy, Ms. Karen Hom, that you are ready to return to the courtroom.